1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                      EASTERN DISTRICT OF CALIFORNIA

10

11   THOMAS SHADDEN, JR.,              )   1:09-cv-01610-JLT HC
                                       )
12            Petitioner,              )   ORDER DENYING PETITION FOR WRIT OF
                                       )   HABEAS CORPUS
13       v.                            )
                                       )   ORDER DIRECTING CLERK OF COURT TO
14   GEORGE GALAZA, Warden,            )   ENTER JUDGMENT AND CLOSE CASE
                                       )
15            Respondent.              )   ORDER DECLINING TO ISSUE A
     _____)   CERTIFICATE OF APPEALABILITY
16

17        Petitioner is a state prisoner proceeding pro se  with a petition for writ of habeas corpus

18   pursuant to 28 U.S.C. § 2254.  On September 30, 2009, Petitioner filed his written consent to the

19   jurisdiction of the United States Magistrate Judge for all purposes.  (Doc. 5).  On February 3, 2010,

20   Respondent filed his written consent to the jurisdiction of the United States Magistrate Judge for all

21   purposes.  (Doc. 10).

22                            **PROCEDURAL HISTORY**

23        Petitioner is in custody of the California Department of Corrections and Rehabilitation

24   ("CDCR")  serving a determinate sentence of sixteen years pursuant to a judgment of the Superior

25   Court of California, County of Kern (the "Superior Court").  On April 5, 2005, Petitioner was

26   convicted by jury trial of discharging a firearm in a grossly negligent manner (Cal. Pen. Code §

27   246.3); discharging a firearm at an unoccupied motor vehicle (Cal. Pen. Code § 247(b); and being a

28   felon in possession of a firearm (Cal. Pen. Code §12021(a)(1). (Clerk's Transcript on Appeal ("CT"),

1   page).  (Lodged Document ("LD") 1, vol. 2, p. 549).[1]

2         Petitioner subsequently filed a direct appeal in the California Court of Appeals, Fifth

3   Appellate District (the "5th DCA"), and on April 24, 2007, the 5th DCA, in an unpublished decision,

4   affirmed Petitioner's conviction.  (Doc. 18, Ex. A).   On June 7, 2007, Petitioner filed a petition for

5   review in the California Supreme Court.  (LD 5).   On August 8, 2007, the California Supreme Court

6   issued a "grant and hold," effectively deferring action on Petitioner's case.  (Id.).

7         On July 23, 2008, Petitioner filed a state habeas petition in Superior Court, which was denied

8   on October 16, 2008.  (LD 6).  On November 20, 2008, Petitioner filed a state habeas petition in the

9   5th DCA, which that court denied on May 28, 2009 as "untimely and conclusional" and because it

10  raised "issues that could have been raised on appeal but were not, that were raised and requested on

11  appeal and that are not otherwise cognizable on habeas."  (LD 8).   Petitioner did not file any state

12  habeas petition in the California Supreme Court challenging his conviction in this case.

13        However, Petitioner was convicted in a separate case in the Superior Court, case no.

14  BF109616A, of attempting to prevent or dissuade a witness from testifying ("the dissuading a

15  witness" case).   (Doc. 18, Exh. B).  In that case, Petitioner was sentenced to an indeterminate term

16  of thirty-five years to life, to be served consecutively to the determinate term in this case ("the car

17  shooting" case).  (Id.).  Petitioner subsequently pursued a direct appeal in the dissuading a witness

18  case and also exhausted various additional claims through habeas corpus in the state courts.  (LD 7,

19  9, 10).

20        On September 11, 2009, Petitioner filed the instant petition, challenging only his conviction

21  and sentence in the car shooting case.  (Doc. 1). Respondent's answer was filed on May 4, 2010.

22  (Doc. 18).  On June 9, 2010, Petitioner filed his Traverse.  (Doc. 20).

23                            **FACTUAL BACKGROUND**

24        The Court adopts the Statement of Facts in the 5th DCA's published/unpublished decision:

25        Vanessa Ortiz considered herself defendant's wife, although they were not legally married
          and not living together.  They had three children.  Vanessa lived with the children and her
26        brother, Jason Ortiz.  According to Vanessa, defendant did not approve of Jason living in

27  _____

28        [1]The sentence included an aggravated term of six-years for the substantive conviction on count one, plus two
    consecutive five-year enhancements for two prior serious felony convictions.  LD 1, p. 549; LD 4, pp. 742-743).

1   Vanessa's apartment with the children because Jason used methamphetamine. According to
2   witnesses, Vanessa, Jason, and defendant all regularly used methamphetamine.

3   One night, Jason and his friend Ruben Navarrete drove to Vanessa's apartment and parked in
    the carport. Vanessa drove up shortly afterward. After the three of them got out of their cars,
    defendant and his friend Arturo Morales drove up. Defendant was angry and began arguing
4   with Vanessa. During the argument, defendant punctured one of the rear tires of Vanessa's
    car with an ice pick. Vanessa walked into the apartment building.

5
6   Defendant punched Vanessa's car with his fist. Then he drew a gun and, from a distance of
    about six feet, fired at least four shots, shattering the window in the driver's door and making
7   a number of bullet holes in the metal. Jason and Ruben stood nearby as defendant did these
    things. Other people were also nearby. When defendant was through, he and Arturo got back
8   in the truck and drove off.

9   (Doc. 18, Exh. A, pp. 2-3).

10                                          **DISCUSSION**

11   **I. Jurisdiction**

12          Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant

13   to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of

14   the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362,

15   375 n. 7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the

16   United States Constitution. The challenged conviction arises out of the Kern County Superior Court,

17   which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C.

18   § 2241(d). Accordingly, the Court has jurisdiction over this action.

19          On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

20   1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.

21   Lindh v. Murphy, 521 U.S. 320 (1997), cert. denied, 522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries

22   v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), cert. denied, 520 U.S. 1107 (1997), overruled on

23   other grounds by, Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed

24   after statute's enactment). The instant proceedings were initiated by the filing of the original petition

25   on September 11, 2009, after the enactment of the AEDPA, and thus this case is governed by the

26   AEDPA.

27   **II. Legal Standard of Review**

28          A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless he

can show that the state court's adjudication of his claim:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)  resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d);  Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003);  Williams v. Taylor, 529 U.S. at 412-413.

The first prong of federal habeas review involves the "contrary to" and "unreasonable application" clauses of 28 U.S.C. § 2254(d)(1).  This prong pertains to questions of law and mixed questions of law and fact.  Williams v. Taylor, 529 U.S. at 407-410;  Davis v. Woodford, 384 F.3d 628, 637 (9th Cir. 2004).  A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result."  Brown v. Payton, 544 U.S. 133, 141 (2005), citing Williams v. Taylor, 529 U.S. at 405.  A state court decision involves an "unreasonable application" of clearly established federal law "if the state court applies [the Supreme Court's precedents] to the facts in an objectively unreasonable manner."  Brown v. Payton, 544 U.S. at 141; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002).

Consequently, a federal court may not grant habeas relief simply because the state court's decision is incorrect or erroneous; the state court's decision must also be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 511 (2003) (citing Williams v. Taylor, 529 U.S. at 409).  Section 2254(d)(1)'s reference to "clearly established Federal law" refers to "the governing legal principle or principles set forth by [the Supreme Court] at the time a state court renders its decision."  Lockyer v. Andrade, 538 U.S. at 64; Barker v. Fleming, 423 F.3d 1085, 1093 (9th Cir. 2005).

The second prong of federal habeas review involves the "unreasonable determination" clause of 28 U.S.C. § 2254(d)(2).  This prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003).  Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of

the evidence presented in the State court proceeding." <u>Wiggins v. Smith</u>, 539 U.S. at 520;  <u>Jeffries v.</u>

<u>Wood</u>, 114 F.3d at 1500 (when reviewing a state court's factual determinations, a "responsible,

thoughtful answer reached after a full opportunity to litigate is adequate to support the judgment").

A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be

debatable among reasonable jurists."  <u>Id.</u> ; <u>see</u> <u>Taylor v. Maddox</u>, 366 F.3d 992, 999-1001 (9th Cir.

2004), <u>cert.denied</u>, <u>Maddox v. Taylor</u>, 543 U.S. 1038 (2004).

        The AEDPA also requires that considerable deference be given to a state court's factual

findings.  "Factual determinations by state courts are presumed correct absent clear and convincing

evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and

based on a factual determination will not be overturned on factual grounds unless objectively

unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)."  <u>Miller-</u>

<u>El v. Cockrell</u>, 537 U.S. at 340.  Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of

historical or pure fact, not mixed questions of fact and law.  <u>See</u> <u>Lambert v. Blodgett</u>, 393 F.3d 943,

976-077 (2004).

        To determine whether habeas relief is available under § 2254(d),  the federal court looks to

the last reasoned state court decision as the basis of the state court's decision.  <u>See</u> <u>Ylst v.</u>

<u>Nunnemaker</u>, 501 U.S. 979, 803 (1991);  <u>Robinson v. Ignacio</u>, 360 F.3d 1044, 1055 (9th Cir. 2004).

Where the state court decided the petitioner's claims on the merits but provided no reasoning for its

decision, the federal habeas court conducts "an independent review of the record...to determine

whether the state court [was objectively unreasonable] in its application of controlling federal law."

<u>Delgado v. Lewis</u>, 223 F.3d 976, 982 (9th Cir. 2002); <u>see</u> <u>Himes v. Thompson</u>, 336 F.3d 848, 853

(9th Cir. 2003).  "[A]lthough we independently review the record, we still defer to the state court's

ultimate decisions."  <u>Pirtle v. Morgan</u>, 313 F.3d 1160, 1167 (9th Cir. 2002).   Where the state court

denied the petitioner's claims on procedural grounds or did not decide such claims on the merits, the

deferential standard of the AEDPA do not apply and the federal court must review the petitioner's 's

claims de novo.  <u>Pirtle v. Morgan</u>, 313 F.3d at 1167.

        The prejudicial impact of any constitutional error is assessed by asking whether the error had

"a substantial and injurious effect or influence in determining the jury's verdict."  <u>Brecht v.</u>

1  Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)(holding

2  that the Brecht standard applies whether or not the state court recognized the error and reviewed it

3  for harmlessness).  Some constitutional errors, however, do not require that the petitioner

4  demonstrate prejudice.  See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v.

5  Cronic, 466 U.S. 648, 659 (1984).  Furthermore, where a habeas petition governed by the AEDPA

6  alleges ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the

7  Strickland prejudice standard is applied and courts do not engage in a separate analysis applying the

8  Brecht standard.  Avila v. Galaza, 297 F.3d 911, 918 n. 7 (9th Cir. 2002);  Musladin v. Lamarque,

9  555 F.3d 830, 835 (9th Cir. 2009).

10  **III.  Review of Petitioner's Claims.**

11     The instant petition itself alleges the following as grounds for relief:

12  **Ground One**          **Petitioner's Fourth Amendment rights were violated by**
                           **Bakersfield Police Officer Michael Hale in conducting**
13                          **an unreasonable search and seizure without probable cause**.

14  **Ground Two**          **Petitioner's Fifth Amendment due process rights were**
                           **violated because insufficient evidence was presented as to**
15                          **the three substantive charges for which he was convicted.**

16  **Ground Three**        **Petitioner's Sixth Amendment right was violated because**
                           **his trial attorney failed and refused to assist Petitioner in his**
17                          **defense and by conspiring with the prosecution**

18  **Ground Four**         **Petitioner's Seventh Amendment right was violated because**
                           **his trial attorney "did not preserve Petitioner's right to a**
19                          **fair trial in accordance to rules of common law."**

20  **Ground Five**         **Petitioner's combined sentence of 55 years to life violates**
                           **the Eighth Amendment's prohibition against cruel and**
21                          **unusual punishment.**

22  **Ground Six**          **Petitioner's due process and equal protection rights were**
                           **violated because his own attorney's defense was**
23                          **"arbitrary and capricious"**

24

25     A.  The Petition Is Unexhausted And Must Be Dismissed.

26     Respondent contends that all six of Petitioner's claims are unexhausted, and therefore that the

27  petition should be dismissed.  The Court agrees.

28     A petitioner who is in state custody and wishes to collaterally challenge his conviction by a

petition for writ of habeas corpus must exhaust state judicial remedies.  28 U.S.C. § 2254(b)(1).  The

exhaustion doctrine is based on comity to the state court and gives the state court the initial

opportunity to correct the state's alleged constitutional deprivations.  Coleman v. Thompson, 501

U.S. 722, 731 (1991);  Rose v. Lundy, 455 U.S. 509, 518 (1982); Buffalo v. Sunn, 854 F.2d 1158,

1163 (9th Cir. 1988).

        A petitioner can satisfy the exhaustion requirement by providing the highest state court with a

full and fair opportunity to consider each claim before presenting it to the federal court.  Duncan v.

Henry, 513 U.S. 364, 365 (1995); Picard v. Connor, 404 U.S. 270, 276 (1971); Johnson v. Zenon, 88

F.3d 828, 829 (9th Cir. 1996).  A federal court will find that the highest state court was given a full

and fair opportunity to hear a claim if the petitioner has presented the highest state court with the

claim's factual and legal basis.  Duncan, 513 U.S. at 365 (legal basis); Kenney v. Tamayo-Reyes, 504

U.S. 1, 112 S.Ct. 1715, 1719 (1992) (factual basis).

        Additionally, the petitioner must have specifically told the state court that he was raising a

federal constitutional claim.  Duncan, 513 U.S. at 365-66; Lyons v. Crawford, 232 F.3d 666, 669

(9th Cir. 2000), amended, 247 F.3d 904 (2001); Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir.

1999); Keating v. Hood, 133 F.3d 1240, 1241 (9th Cir. 1998).  In Duncan, the United States

Supreme Court reiterated the rule as follows:

        In Picard v. Connor, 404 U.S. 270, 275 . . . (1971), we said that exhaustion of state
        remedies requires that petitioners "fairly presen[t]" federal claims to the state courts in order
        to give the State the "opportunity to pass upon and correct alleged violations of the prisoners'
        federal rights" (some internal quotation marks omitted).  If state courts are to be given the
        opportunity to correct alleged violations of prisoners' federal rights, they must surely be
        alerted to the fact that the prisoners are asserting claims under the United States Constitution.
        If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied
        him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not
        only in federal court, but in state court.

Duncan, 513 U.S. at 365-366.  The Ninth Circuit examined the rule further, stating:

        Our rule is that a state prisoner has not "fairly presented" (and thus exhausted) his
        federal claims in state court unless he specifically indicated to that court that those claims
        were based on federal law. See Shumway v. Payne, 223 F.3d 982, 987-88 (9th Cir. 2000).
        Since the Supreme Court's decision in Duncan, this court has held that the petitioner must
        make the federal basis of the claim explicit either by citing federal law or the decisions of
        federal courts, even if the federal basis is "self-evident," Gatlin v. Madding, 189 F.3d 882,
        889 (9th Cir. 1999) (citing Anderson v. Harless, 459 U.S. 4, 7 . . . (1982), or the underlying
        claim would be decided under state law on the same considerations that would control
        resolution of the claim on federal grounds. Hiivala v. Wood, 195 F3d 1098, 1106-07 (9th Cir.

1    1999); <u>Johnson v. Zenon</u>, 88 F.3d 828, 830-31 (9th Cir. 1996); . . . .

2           In <u>Johnson</u>, we explained that the petitioner must alert the state court to the fact that
     the relevant claim is a federal one without regard to how similar the state and federal
3    standards for reviewing the claim may be or how obvious the violation of federal law is.

4    <u>Lyons v. Crawford</u>, 232 F.3d 666, 668-669 (9th Cir. 2000) (italics added).

5           Respondent has lodged documents with the Court that establish that Petitioner's appellate

6    attorney raised the following issues, on direct appeal, in the Petition for Review before the California

7    Supreme Court: (1) insufficient evidence of grossly negligent discharge of a firearm or discharge of a

8    firearm at an unoccupied motor vehicle; (2) California Penal Code section 246.3 is unconstitutionally

9    vague on its face and as applied; (3) the trial court erred in failing to instruct the jury that gross

10   negligence requires a conscious indifference to the consequences of one's acts; (4) the trial court

11   violated due process by admitting evidence of a shooting at the occupied house of one of the

12   prosecution's witnesses; (5) the trial court erred in failing to issue a sua sponte instruction regarding

13   owner consent as a defense to California Penal Code section 247(b); and (6) violation of Petitioner's

14   Sixth Amendment right to the effective assistance of counsel where counsel failed to request an

15   instruction on owner's consent as a defense.  (LD 5).

16          A comparison of the issues raised in the instant petition with those raised in the Petition for

17   Review, indicate that the only issue shared by both filings is Petitioner's claim that insufficient

18   evidence was presented to support the conviction for negligent discharge of a weapon, i.e., Cal. Pen.

19   Code § 246.3, and discharge of a firearm at an unoccupied vehicle.  Thus, the claim of insufficiency

20   of the evidence to support these convictions is the only one in the instant petition that was presented

21   to the California Supreme Court in the direct appeal.  Since Petitioner's state habeas petition did not

22   address the conviction in the car shooting case, it is equally clear that none of the claims in the

23   instant petition were exhausted through collateral review in state court.

24          From the foregoing, the Court concludes that Petitioner has not presented Grounds One,

25   Three, Four, Five, and Six in this petition to the California Supreme Court as required by the

26   exhaustion doctrine.  As to Ground Two, Petitioner has exhausted only his sufficiency of the

27   evidence claims as to negligent discharge of a firearm and discharging a firearm at an unoccupied

28   vehicle; he has not exhausted his sufficiency claim for possession of a weapon by a felon.   Because

1   Petitioner has not presented the above-mentioned claims for federal relief to the California Supreme

2   Court, the Court must dismiss them.  See Calderon v. United States Dist. Court, 107 F.3d 756, 760

3   (9th Cir. 1997) (en banc);  Greenawalt v. Stewart, 105 F.3d 1268, 1273 (9th Cir. 1997).

4          Nevertheless, the Court will also address the merits of Petitioner's unexhausted claims as

5   well as his exhausted claim in this Order.

6          B.  Petitioner's Substantive Claims All Lack Merit.

7          As discussed more fully below, after considering all of Petitioner's claims, the Court agrees

8   with Respondent that all six claims lack merit.

9

10  **Ground One**            **Petitioner's Fourth Amendment rights were violated by**
                              **Bakersfield Police Officer Michael Hale in conducting**
11                            **an unreasonable search and seizure without probable cause**.

12         Petitioner first contends that his Fourth Amendment rights were violated due to an

13  unreasonable search and seizure of evidence conducted without probable cause.  (Doc. 1, p. 36).

14  This contention is without merit.

15         Petitioner's claims fall squarely within the clearly established rule set forth in Stone v.

16  Powell, 428 U.S. 465 (1976).  In Stone, the United States Supreme Court held that "where a state has

17  provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner

18  may not be granted federal habeas corpus relief on the ground that evidence obtained in an

19  unconstitutional search or seizure was introduced at his trial."  Stone, 428 U.S. at 494.  The Ninth

20  Circuit, relying on Stone, has explained that even if the state court's determination of the Fourth

21  Amendment issues results in an incorrect decision, it will not be remedied in federal habeas corpus

22  actions if the petitioner was provided with a full and fair opportunity to litigate his claims.  See,

23  Woolery v. Arvan, 8 F.3d 1325, 1326 (9th Cir. 1993), cert. denied, 511 U.S. 1057 (1994); Locks v.

24  Sumner, 703 F.2d 403, 408 (9th Cir. 1983), cert. denied, 464 U.S. 933 (1983).  The policy behind the

25  Stone Court's analysis is that the exclusionary rule is applied to stop future unconstitutional conduct

26  of law enforcement.  Stone, 428 U.S. at 492.  However, excluding evidence that is not untrustworthy

27  creates a windfall to the defendant at a substantial societal cost.  See, Stone, 428 U.S. at 489-90;

28  Woolery, 8 F.3d at 1327-28.  Thus, the Ninth Circuit has described the rationale for this rule by

finding:

> The holding is grounded in the Court's conclusion that in cases where a petitioner's Fourth Amendment claim has been adequately litigated in state court, enforcing the exclusionary rule through writs of habeas corpus would not further the deterrent and educative purposes of the rule to an extent sufficient to counter the negative effect such a policy would have on the interests of judicial efficiency, comity and federalism.

Woolery, 8 F.3d at 1326; see also, Stone, 428 U.S. at 493-494.

The relevant inquiry is whether Petitioner had the opportunity to litigate his claims, not whether in fact he did so, or even whether the claim was correctly decided.  See, Ortiz-Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996); see also, Gordon v. Duran, 895 F.2d 610, 613 (9th Cir. 1990) (holding that because California Penal Code § 1538.5 provides the opportunity to challenge evidence, dismissal under Stone was necessary).

In the instant case, Petitioner's Fourth Amendment claims were first reviewed at trial in a motion to suppress evidence pursuant to California Penal Code § 1538.5.  (LD 1, pp. 145-150).  The trial court held a hearing on the motion, the prosecution conceded the motion, and the trial court *granted* it, ordering as follows:

> All observations made by the arresting officers pursuant to the illegal search of the premises and the illegal arrest of the defendant, all firearms and ammunition obtained pursuant to that search and arrest, all statements from the defendant and any other witness made pursuant to that search and arrest, except for the issue of impeachment, that is reserved as a trial matter.

(LD 4, Vol. I, p. 10).

Petitioner's motion to suppress makes clear that it challenged the legality of the search of Petitioner's residence at 529 Knotts St.  (LD 1, Vol. I, p. 145).  This is the same residence to which Petitioner refers in his petition when alleging the unconstitutional search and seizure.  (Doc. 1, pp. 10-11).

In light of the foregoing, the Court finds that Petitioner was afforded "an opportunity for full and fair litigation" of his Fourth Amendment claim within the meaning of Stone.  Accordingly, Stone v. Powell precludes habeas review of Ground One.   Moreover, in light of the fact that the trial court granted Petitioner's motion and suppressed all evidence obtained during the illegal search, it appears that there is no further relief this Court could afford Petitioner.

1

2

| **Ground Two** | **Petitioner's Fifth Amendment due process rights were violated because insufficient evidence was presented as to the three substantive charges for which he was convicted.** |

3       Petitioner contends that insufficient evidence was presented as to all three of his substantive

4   convictions.  As discussed below, the Court rejects those contentions as being without merit.

5       A.  <u>Standard of Review For Sufficiency of the Evidence.</u>

6       The law on sufficiency of the evidence is clearly established by the United States Supreme

7   Court.  Pursuant to the United States Supreme Court's holding in <u>Jackson v. Virginia</u>, 443 U.S. 307

8   (1979), the test on habeas review to determine whether a factual finding is fairly supported by the

9   record is as follows:

10      "[W]hether, after viewing the evidence in the light most favorable to the
        prosecution, any rational trier of fact could have found the essential elements
11      of the crime beyond a reasonable doubt."

12  <u>Jackson</u>, 443 U.S. at 319; <u>see also</u> <u>Lewis v. Jeffers</u>, 497 U.S. 764, 781 (1990).  Thus, only if "no

13  rational trier of fact" could have found proof of guilt beyond a reasonable doubt will a petitioner be

14  entitled to habeas relief.  <u>Jackson</u>, 443 U.S. at 324.   Sufficiency claims are judged by the elements

15  defined by state law.  <u>Id</u>. at 324, n. 16.[2]

16      It appears to be an open question in the Ninth Circuit whether AEDPA adds a second level of

17  deference to this standard, so that a federal habeas petitioner may obtain relief only by demonstrating

18  that the state court's adjudication on the merits of the claim involved an unreasonable application of

19  <u>Jackson's</u> "no rational trier of fact" standard.  <u>See Garcia v. Carey</u>, 395 F.3d 1099, 1102 (9th Cir.

20  2005); <u>Chien v. Shumsky</u>, 373 F.3d 978, 983 (9th Cir. 2004)(en banc).  However, the Court here need

21  not address that issue because the Court reaches the same result whether the record is reviewed

22  directly under <u>Jackson</u> or under the more deferential filter of the AEDPA standard.  <u>See id.</u>

23      This Court must presume the correctness of the state court's factual findings. 28 U.S.C.

24  § 2254(e)(1); <u>Kuhlmann v. Wilson</u>, 477 U.S. 436, 459 (1986).  This presumption of correctness

25  applies to state appellate determinations of fact as well as those of the state trial courts.  <u>Tinsley v.</u>

26

27      _____

28      [2]In reviewing sufficiency of evidence claims, California courts expressly follow the standard
    enunciated in <u>Jackson</u>.  <u>See</u> <u>People v. Johnson</u>, 26 Cal.3d 557, 575-578 (1980); <u>see also</u> <u>People v.</u>
    <u>Thomas</u>, 2 Cal.4th 489, 513 (1992).

1  Borg, 895 F.2d 520, 525 (9th Cir.1990).  Although the presumption of correctness does not apply to

2  state court determinations of legal questions or mixed questions of law and fact, the facts as found by

3  the state court underlying those determinations are entitled to the presumption.  Sumner v. Mata, 455

4  U.S. 539, 597 (1981).

5  B.  Sufficient Evidence Was Presented on Negligent Discharge of a Firearm.

6  1.  The Elements of the Crime.

7  California Penal Code 246.3 provides in pertinent part that "any person who willfully

8  discharges a firearm in a grossly negligent manner which could result in injury or death to a person is

9  guilty of a public offense and shall be punished by imprisonment in a county jail not exceeding one

10  year or by imprisonment in the state prison."  Therefore, in California, the elements of the crime of

11  discharging a firearm in a grossly negligent manner are that (1) a person willfully and unlawfully

12  discharged a firearm; (2) that the person who discharged the firearm did so in a grossly negligent

13  manner; and (3) the discharge of the firearm was done in a manner which could result in injury or

14  death to a person.  California Jury Instructions–Criminal ("CALJIC"), 6th Ed.,  9.03.3 (2011).[3]

15  2.  Sufficient Evidence Was Presented To Support A Conviction.

16  In this case, sufficient evidence was presented upon which a reasonable juror could have

17  found that Petitioner committed the offense of negligent discharge of a firearm.  According to the

18  testimony of Jason Ortiz, after an argument with his wife Vanessa, Petitioner walked to Vanessa's

19  car, hit the rear window with his fist, then fired his gun five times at the rear of the vehicle.  (LD 4,

20  pp. 191-192; 205-207).  Petitioner then walked around the car and shot the passenger side, breaking

21  glass and causing bullet holes near the gas tank.  (LD 4, p. 208).  Petitioner then stabbed one of the

22  rear tires with an ice pick.  (LD 4, pp. 209; 259).  Petitioner walked around the are and fired more

23  shots, then got back in his truck, and drove off.  (LD 4, pp. 249; 251).  At the time Petitioner fired on

24  the vehicle, Ortiz and his friend, Navarrete, were within six feet of the vehicle, and Navarrete

25  testified that he turned and saw three additional people standing near him as well as other people in

26  the vicinity parking their car in a carport.  (LD 4, pp. 213; 290).

27

28  [3] At trial, the jury was duly instructed with CALJIC No. 9.03.3.  (LD 1, Vol. 2, p. 368).

1   In addressing the sufficiency argument on this particular conviction, the 5th DCA, after

2   observing that "gross negligence" is requires a showing that the defendant's act was "such a

3   departure from what would be the conduct of an ordinarily prudent or careful [person] under the

4   same circumstances as to be incompatible with a proper regard for human life...," noted as follows:

> The evidence amply showed that defendant's actions were incompatible with a proper regard
> for human life. Two bystanders, Jason and Ruben, were near Vanessa's car as defendant
> fired; both testified that they were 20 feet away, about the length of a car. Other people were
> in the carport or the alley beside it and in a car that was parking nearby. [Another person]
> was also present in the carport. We have no hesitation in concluding the evidence–showing
> defendant fired shots into a car parked in the carport of an inhabited apartment building in the
> presence of numerous bystanders–was sufficient to support a finding of gross negligence.
> The fact that the gun was not actually aimed at a person makes no difference under these
> circumstances. A bullet could easily have struck a person after passing through the car or
> ricocheting off the car or off the carport's floor.

11   (LD 5).

12   Petitioner has failed to show how the state court's adjudication of this issue was contrary to

13   or an unreasonable application of clearly established federal law. Accordingly, this claim must be

14   denied.

15   C.   Sufficient Evidence Was Presented on Discharge of a Firearm At An
    Unoccupied Vehicle..

17   1.   The Elements of the Crime.

18   In California, the elements of the crime of discharging a firearm at an unoccupied vehicle are

19   (1) willfully discharging a firearm, and (2) the discharge of the firearm was directed at an unoccupied

20   motor vehicle. California Jury Instructions–Criminal ("CALJIC"), 6th Ed., 9.03.2 (2011).[4]

21   2.   Sufficiency of the Evidence.

22   Given the findings of fact relied upon in the 5th DCA's decision, findings which this Court is

23   required to accept under the AEDPA, it is specious to assert that insufficient evidence was presented

24   as to these two elements. Petitioner maintains that he did not fire the weapon and that the only

25   witness present when the police arrived, Vanessa, claimed to have been in the house when the shots

26   were fired. (Doc. 1, 34). Of course, Petitioner's argument completely ignores the testimony of

---

[4]The jury was duly instructed as to these two elements using CALJIC No. 9.03.2. (LD 1, v. 2, p. 370).

Navarrete and Ortiz, which Petitioner self-servingly discounts as "fabricated" and "based on drugs [and] homosexuality" and which the "alleged witnesses contradicted within the numerous police reports." (Doc. 1, p. 33). Petitioner's counsel, however, had ample opportunity at trial to cross-examine these witnesses and the credibility of their eyewitness testimony was a matter for the jury's consideration. The jury clearly believed those witnesses. Equally as clearly, viewing the evidence in the light most favorable to the prosecution, a reasonable juror could have believed that Petitioner wilfully discharged his firearm at the victim's unoccupied vehicle.

    D.   Sufficient Evidence Was Presented on Possession of a Weapon by a Felon.

        1.   The Elements of the Crime.

California Penal Code § 12021(a)(1) provides in pertinent part that "[a]ny person who has been convicted of a felony under the laws of the United States, the state of California, or any other state, government, or country...and who owns, purchases, receives, or has in his or her possession or under his or her custody or control a firearm is guilty of a felony." In California, therefore, the elements of the crime of possession of a weapon by a felon are (1) the person previously convicted of a felony owned, purchased, received, or had in his possession or under his control a firearm, and (2) that person had knowledge of the presence of the firearm. California Jury Instructions–Criminal ("CALJIC"), 6th Ed., 12.44 (2011).[5]

        2.   Sufficiency of the Evidence.

Because the parties stipulated that Petitioner had suffered a prior felony conviction, the only element of this offense for the jury's consideration was whether Petitioner had knowledge of the presence of the firearm. In contrast to situations where a felony might be unaware that a firearm was hidden in his vehicle, or in his residence, or in some other location without his knowledge, in this case, Petitioner's actions in using the weapon and directing it at the victim's vehicle establish beyond a reasonable doubt that Petitioner not only had actual knowledge of the weapon, but also that he used it to commit at least two other crimes.

---

[5]The jury was duly instructed as to these two elements using CALJIC No. 9.03.2. (LD 1, v. 2, p. 371). The jury was also instructed that the parties had stipulated that Petitioner had been previously convicted of a felony and therefore that element of the offense was not a subject for the jury's consideration. (Id., p. 372).

| | |
|---|---|
| **Ground Three** | **Petitioner's Sixth Amendment right was violated because his trial attorney failed and refused to assist Petitioner in his defense and by conspiring with the prosecution** |

Petitioner contends that he did not receive the effective assistance of counsel, arguing that his trial attorney (1) failed or refused to assist Petitioner in his defense by "conspiring in collusion with [the prosecutor] to lie to the Court using unreliable witness's [sic] that were coerced to testify on issues inferring guilt...without any proof of which;" (2) failed to raise meaningful objections; (3) failed to cross-examine the arresting officer; and (4) failed to require the prosecution to prove the case beyond a reasonable doubt. (Doc. 1, pp. 36-37). Petitioner also inserts a generalized argument that his counsel's ineffectiveness is "transparent" in the written transcript of trial. (Id., p. 37).

Although many of these ineffectiveness issues are unsupported by any detail or citation to the record, and are, at times, virtually unintelligible to the Court, after making a concerted effort to liberally construe these claims of ineffective assistance of counsel, the Court concludes that they are all without merit.

**A.  The Standard For Ineffective Assistance of Counsel**.

The test for demonstrating ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668 (1984). Petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Id. at 688. Toward this end, Petitioner must identify the acts or omissions that he claims were not the result of reasonable professional judgment. Id. at 690. Then the Court must determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. Id. "We strongly presume that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, at 466 U.S. at 689).

Next, Petitioner must demonstrate prejudice caused by the ineffectiveness of his lawyer. Strickland, 466 U.S. at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.

With the passage of the AEDPA, habeas relief may only be granted if the state-court decision unreasonably applied this general <u>Strickland</u> standard for ineffective assistance.  <u>Knowles v. Mirzayance</u>, 556 U.S. ___, 129 S.Ct. 1411, 1419 (2009).  Accordingly, the question "is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard "was incorrect but whether that determination was unreasonable–a substantially higher threshold."  <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473 (2007); <u>Knowles v. Mirzayance</u>, 556 U.S. ___, 129 S.Ct. at 1420.  In effect, the AEDPA standard is "doubly deferential" because it requires that it be shown not only that the state court determination was erroneous, but also that it was objectively unreasonable.  <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003).  Moreover, because the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.  <u>See</u> <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004)("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

With these principles in mind, the Court now turns to an analysis of Petitioner's claims of ineffective assistance of appellate counsel.

**B.  <u>Petitioner Was Not Denied the Effective Assistance of Counsel</u>.**

The Superior Court denied Petitioner's contention that his trial counsel had been ineffective, ruling as follows:

> Petitioner claims that his counsel failed to zealously represent him with the bounds of the law, and colluded with prosecution to obtain a conviction.  The transcripts show that is not the case.
>
> His counsel vigorously impeached Vanessa Ortiz regarding her continual use of methamphetamine even during the raising of her three children.  He impeached Officer David Pence for his failure to write an accurate report i.e., whether or not the bullets were in the right side or left side of the door.  Upon redirect examination by the prosecution, the reversal of images found the bullet fragments to be in the left side of the door of the vehicle.
>
> His counsel sought to shift blame to Arturo Morales for shooting into the tires of Ms. Ortiz's vehicle and shooting into the vehicle.  Mr. Morales proved to be a hostile witness and the tone from the direct and cross-examination is that Mr. Morales was seeking to protect his cousin.
>
> In his closing argument, petitioner's counsel sought to case doubt upon the circumstantial evidence and show that it was not petitioner, but Mr. Morales who fired th shots into the vehicle.

1    Since there was two prior convictions of petitioner for terrorist threats and arson, defense
     counsel could not foster any arguments as to their existence.  However, the strikes were
2    stricken due to a Romero motion.

3    Petitioner's counsel objected to the introduction of tapes and photos as prejudicial under
     Evidence Code section 352.  He sought to ensure that certain exhibits offered by the People
4    were properly redacted since they were not introduced into evidence.

5    Petitioner must show that not only was counsel deficient, but that deficiency had it not exited
     would result in a probability of the change in the outcome.  This outcome could be either an
6    acquittal or a reduction of punishment.

7    Petitioner points to no witnesses or facts his counsel could investigate, which would have
     resulted in the change in the present verdict.

8
     ...
9
     Defense counsel tried his best to obtain an acquittal.  His failure to obtain one is not through
10   professional negligence.

11   (LD 6).  The Court agrees and notes also that trial counsel filed and prosecuted a successful motion

12   to suppress evidence obtained in the search at 529 Knotts St.

13         Although Petitioner makes generalized allegations of ineffectiveness, it appears that

14   Petitioner's major complaint is that trial counsel was not able to secure an acquittal.  Petitioner has

15   not, as the Superior Court noted, detailed any specific acts or failures to act that fall below the type

16   of performance routinely required of trial counsel by the Sixth Amendment, let alone that also

17   prejudiced Petitioner by adversely affecting the outcome of the trial.  That being the case, the Court

18   will not address this matter further because doing so would require the Court to attempt to prove a

19   negative, something that is unnecessary given the ample evidence in the record that trial counsel's

20   performance was constitutionally adequate.

21         The state court applied the proper federal standard to the facts evident in the record and

22   reached a defensible result.  Accordingly, the Court concludes that the state court adjudication of this

23   issue was neither contrary to nor an unreasonable application of clearly established federal law.

24         **C.  Standard For Prosecutorial Misconduct**.

25         A habeas petition will be granted for prosecutorial misconduct only when the misconduct "so

26   infected the trial with unfairness as to make the resulting conviction a denial of due process."

27   Darden v. Wainwright, 477 U.S. 168, 171 (1986) (*quoting* Donnelly v. DeChristoforo, 416 U.S. 637,

28   643 (1974)); see, Bonin v. Calderon, 59 F.3d 815, 843 (9th Cir. 1995).  To constitute a due process

1  violation, the prosecutorial misconduct must be "of sufficient significance to result in the denial of

2  the defendant's right to a fair trial." Greer v. Miller, 485 U.S. 756, 765 (1987) (*quoting* United

3  States v. Bagley, 473 U.S. 667 (1985)). Under this standard, a petitioner must show that there is a

4  reasonable probability that the error complained of affected the outcome of the trial - i.e., that absent

5  the alleged impropriety, the verdict probably would have been different.

6  **D.  No Prosecutorial Misconduct Has Been Established**.

7  Here, Petitioner has failed to articulate even the sketchiest of purported "conspiracies"

8  between his counsel and the prosecution.  Instead, Petitioner apparently is relying on his oft-repeated

9  assertion that the prosecution presented witnesses who perjured themselves and secured convictions

10  without supporting them with sufficient evidence.  As the Superior Court correctly noted,

11  > Finally, petitioner's arguments of prosecutorial misconduct are unavailing since according to
12  > the transcripts petitioner supplied, the People objected to the form of the questions counsel
> asked as he can under the evidence code.  There is no evidence that prosecution introduced
> false testimony or in any way sought its inclusion into the record.  The prosecution pointed
13  > out in its rebuttal to counsel's closing argument that the People need not present a perfect
> case, but only one where the evidence points to a conviction beyond a reasonable doubt.  That
14  > is what it obtained through a guilty verdict.

15  (LD 6).

16  The Court has already addressed the sufficiency of the evidence for all three convictions and

17  found the evidence meets constitutional standards.  Petitioner has not made even a minimal showing

18  that the prosecution engaged in any type of "conspiracy" with defense counsel or that the prosecution

19  engaged in any type of unilateral misconduct other than to prove Petitioner's guilt to the satisfaction

20  of a properly instructed jury when Petitioner disputes his own guilt.  In light of the complete absence

21  of any evidence of misconduct, the Court cannot find that any due process violation occurred.  The

22  state court adjudication of this issue was not contrary to nor an unreasonable application of clearly

23  established federal law.

24  **Ground Four**       **Petitioner's Seventh Amendment right was violated because his**
                           **trial attorney "did not preserve Petitioner's right to a fair trial in**
25                         **accordance to rules of common law."**

26  Petitioner maintains his defense counsel failed to preserve Petitioner's Seventh Amendment

27  right "to a fair trial in accordance to rules of common law.  This argument is groundless.

28  To the extent that Petitioner actually maintains that a violation of his Seventh Amendment

right occurred, the argument is specious.  As Respondent correctly points out, the Seventh Amendment guarantees the right to a jury trial in civil cases, not criminal ones.  E.g., In re U.S. Financial Securities Litigation, 609 F. 2d 411, 419-422 (9th Cir. 1979); U.S. v. Luisi, 568 F.Supp.2d 106, 115 (D.Mass. 2008)(the Sixth Amendment incorporates the right to a jury trial for criminal cases while the Seventh Amendment incorporates that right for civil cases).  Since Petitioner seeks review of the state court adjudication of his criminal convictions and sentence, ipso facto, the Seventh Amendment has no applicability.

However, assuming, arguendo, that Petitioner is really arguing a denial of the effective assistance of counsel based on his trial counsel's allegedly defective performance, the Court has already addressed that issue in the previous portion of this Order.

**Ground Five**          **Petitioner's combined sentence of 16 years violates the Eighth Amendment's prohibition against cruel and unusual punishment.**

Petitioner next contends that his sentence of 16 years violates the federal prohibition against cruel and unusual punishment contained in the Eighth Amendment to the United States Constitution. (Doc. 1, p. 37).  This contention is also without merit.

In two companion cases, Lockyer v. Andrade, 538 U.S. 63, and Ewing v. California, 538 U.S. 11 (2003), the Supreme Court provided guidance in applying Eighth Amendment jurisprudence to California's Three Strikes law in habeas cases.  In Ewing, the Supreme Court explained that while the constitutional principle of proportionality between crime and sentence applies to noncapital sentences, "[t]he Eighth Amendment does not require strict proportionality between crime and sentence.  Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." Ewing, 538 U.S. at 23 (citations omitted).  The gross disproportionality principle applies "only in the 'exceedingly rare' and 'extreme' case."  Andrade, 538 U.S. at 73 (citations omitted).

Applying these standards, in Ewing, the Supreme Court rejected the defendant's claim that a sentence of 25 years-to-life for stealing nearly $1,200 worth of golf clubs was "grossly disproportionate" to his crime where the defendant had previously been convicted of three residential burglaries and a robbery.  Ewing, 538 U.S. at 18.  Similarly, in Andrade the Court reversed the Ninth Circuit's grant of habeas relief to a defendant sentenced to two consecutive 25 years-to-life sentences

1   for two petty theft convictions for stealing five videotapes worth less than $85, and four video tapes

2   worth less than $70, respectively.

3        In <u>Andrade</u>, the Supreme Court concluded that the state court decision upholding the

4   sentence was not "contrary to" the governing legal principles set forth in Supreme Court cases.

5   <u>Andrade</u>, 538 U.S. at 73-74.  The Supreme Court also held that the state appellate court did not

6   "unreasonably appl[y]" the gross disproportionality principle to Andrade's case since that principle

7   "gives legislatures broad discretion to fashion a sentence that fits within the scope of the

8   proportionality principle–the 'precise contours' of which 'are unclear.'" <u>Id.</u>, 538 U.S. at 75-77.

9   According to the Supreme Court, "it was not objectively unreasonable for the California Court of

10   Appeal to conclude that these 'contours' permitted an affirmance of Andrade's sentence." <u>Id.</u>  In

11   addition to <u>Andrade</u> and <u>Ewing</u>, the Supreme Court has also upheld a life sentence under Texas's

12   habitual offender statute for obtaining $120 by false pretenses, <u>Rummel v. Estelle</u>, 445 U.S. 263

13   (1980), and a life sentence *without the possibility of parole* for possession of cocaine.  <u>Harmelin v.</u>

14   <u>Michigan</u>, 501 U.S. 957 (1991).

15        In 2004, the Ninth Circuit held that a Three Strikes sentence of 25 years-to-life for a third

16   offense of shoplifting a $199 VCR was cruel and unusual punishment.  <u>Ramirez v. Castro</u>, 365 F.3d

17   755 (9th Cir. 2004).  The <u>Ramirez</u> petitioner's criminal history consisted of two convictions for

18   second-degree robbery as a result of a single guilty plea entered before the Three Strikes law was

19   enacted.  In that case, the prosecution used two 1991 shoplifting convictions to charge the petitioner

20   in 1995 with one count of petty theft with a prior theft-related conviction. (Cal. Pen. Code § 666).

21   The jury found the two 1991 shoplifting convictions were strikes, the trial court refused to strike

22   either of them, and sentenced the petitioner to 25 years-to-life. <u>Ramirez v. Castro</u>, 365 F.3d at 756.

23        Prior to his third-strike sentence, the petitioner had never been sentenced to prison, and had

24   been incarcerated only one time in the county jail. In finding the sentence unconstitutional, the Ninth

25   Circuit determined that the state court unreasonably applied the gross proportionality principle to the

26   "unique facts of Ramirez's case." <u>Id.</u> at 774.

27        By contrast, in another 2004 case, the Ninth Circuit held that a Three Strikes sentence of 25

28   years-to-life for a third "wobbler" offense did not constitute cruel and unusual punishment, because

1  the petitioner had a lengthy criminal history, had been incarcerated several times, and the strikes used

2  to enhance the petitioner's sentence involved the threat of violence. Rios v. Garcia, 390 F.3d 1082,

3  1086 (9th Cir. 2004).

4          In light of this jurisprudence, the Court concludes that Petitioner's sentence here is not

5  grossly disproportionate to the offense and therefore the Court must conclude that the sentence

6  imposed in this case and affirmed by the state courts did not offend the Eighth Amendment.

7          At the outset, the Court notes that Petitioner does not expressly argue that his sentence, per

8  se, is cruel and unusual; rather, he argues that it is cruel and unusual to subject him to a 16 year

9  sentence *in light of* the numerous constitutional violations he has alleged in the petition.  However,

10  as discussed above, none of Petitioner's constitutional allegations have merit.  Accordingly, using

11  Petitioner own logic, he has no basis on which to rest his Eighth Amendment argument.

12          Even had Petitioner claimed that the sentence itself was a constitutional violation, his claim

13  would nevertheless lack merit.  Contrary to Petitioner's implicit argument, possession of a weapon

14  by a felon, discharging a weapon at a vehicle, and grossly negligent discharge of a firearm are not

15  minor offenses, but rather are offenses that the State of California has deemed fit to classify as

16  felonies.

17          The sentencing court summarized his view of Petitioner's circumstances as follows:

18          The Court finds that there are no circumstances in mitigation.

19          In aggravation, the defendant's prior convictions as an adult and sustained petitions in
           juvenile delinquency proceedings are numerous.

20

21          The defendant's performance on probation prior to 2001 and parole was unsatisfactory due to
           term violations.

22          And the defendant has engaged in violent conduct, which indicates he's a serious danger to
           society, in that he previously served a prison commitment involving arson and terrorist
23         threats and was convicted of spousal battery in another case.

24  (LD 4, Vol. 7, p. 739).

25          In Andrade, the U.S. Supreme Court upheld two consecutive 25 years-to-life sentences for

26  stealing videotapes valued at less than $200, after convictions on two counts of petty theft.  Here,

27  Petitioner received a determinate term of 16 years for being a felon in possession of a weapon,

28  discharging a weapon at a vehicle, and grossly negligent discharge of a firearm.  Given the likelihood

1   that serious bodily injury might result from the discharge of a weapon in proximity to other persons,

2   these crimes are clearly more serious in nature than the petty theft conviction at issue in Andrade.

3   Moreover, as in Andrade, Petitioner was no first-time offender, but, unlike Andrade,  his sentence

4   here is determinate, thus assuring his eventual release.

5          Beyond the instant offense, however, the Court must consider Petitioner's prior history,

6   which is more extensive than in Ramirez, as well as his prison incarceration and unsuccessful period

7   of parole.  As the Supreme Court stated in Ewing, "[i]n weighing the gravity of Ewing's offense, we

8   must place on the scales not only his current felony, but also his long history of felony recidivism."

9   Ewing, 538 U.S. at 29.  Indeed, the prior "strikes" with which Petitioner was originally charged are

10  eerily similar to the facts of the instant offense, and indicate Petitioner's inability to respond

11  appropriately in certain social situations, his propensity to use of threats and violence to resolve

12  perceived problems, and his willingness to damage and destroy the property of others, often

13  endangering bystanders in the process, in order to achieve his own objectives.

14         Based on the record now before this Court, Petitioner's criminal history shows that prior to

15  the instant offense, Petitioner had been convicted of two serious "strike" felonies, including felony

16  convictions for criminal threats and arson.  Also, the trial court gave Petitioner every benefit of the

17  doubt by dismissing one of the prior strikes, thus eliminating the potential 25-year-to-life

18  indeterminate sentence mandated under California law for third strike defendants, and effectively

19  reducing his sentence to a determinate term of 16 years.

20         In declining to impose the mandated life sentence for these crimes, the trial court adroitly

21  balanced the reality that this was essentially a property crime in which no one was injured with the

22  recognition that, given Petitioner's prior criminal history and apparent inability to control his violent

23  behavior, serious consequences must inevitably follow:

24         The Court has considered the issue of the defendant's prior strike convictions.  And looking
       at the prior case in which he had two strikes and the circumstances of this particular case, the
25     Court does find that in the interest of justice it would be appropriate to strike one of the
       strikes, the Court noting that the one incident–the one case arose out of the same incident, in
26     which there were two strikes–although, that doesn't mean the Court can't consider that.  But
       it did occur in that manner–and that the circumstances of this case do not appear to warrant a
27     life sentence.

28  (LD 4, Vol. 7, pp. 739-740).

1    However, the Court went on to note as follows:

2    I do concede and agree with the prosecutor that he is a threat to society.

3    And the Court is going to go with the 16-year sentence, of which he has to spend 85 percent
     of that time in custody before he'll be eligible for parole, which means 14 years.

4

5    (Id., p. 740).

6        Given the foregoing, Petitioner's case is not "the rare case in which a threshold comparison

7    of the crime committed and the sentence imposed leads to an inference of gross proportionality."

8    Harmelin, 501 U.S. at 1005.  Thus, Petitioner's prior criminal history can be distinguished from that

9    of Ramirez, and does not warrant habeas relief.  As was true in Ewing, Petitioner's sentence of 16

10   years is justified by the State's public-safety interest in incapacitating and deterring recidivist felons,

11   and is amply supported by Petitioner's numerous convictions documenting his unstinting disregard

12   for the law and an apparent inability to conform his behavior to the norms of society.  Ewing, 538

13   U.S. at 29-30.

14       In sum, Petitioner's sentence, when compared with his underlying offenses, does not violate

15   the Eighth Amendment's prohibition on cruel and unusual punishment.  Based on the foregoing, the

16   Court concludes that the state court's rejection of Petitioner's claim was neither contrary to nor an

17   unreasonable application of clearly established United States Supreme Court precedent.  Accordingly,

18   this claim should be denied.

19       **Ground Six**          **Petitioner's due process and equal protection rights were violated
                                  because his own attorney's defense was "arbitrary and capricious"**

20

21       The Court agrees with Respondent that, applying the most liberal construction to Ground Six,

22   it appears that this claim is simply a variant of Ground Two, i.e., ineffective assistance of trial

23   counsel.  It does not appear that Ground Six articulates any new basis for a Sixth Amendment

24   violation apart from those grounds already discussed previously in this Order.  Accordingly, the

25   Court rejects Ground Six for the reasons set forth in the discussion regarding Ground Two.

26       Accordingly, the Court concludes that the petition for writ of habeas corpus does not

27   establish that the state court adjudication was either contrary to or an unreasonable application of

28   clearly established federal law and must, therefore, be denied with prejudice.

Moreover, the Court declines to issue a certificate of appealability. A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 537 U.S. 322, 335-336 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from--
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
> (B) the final order in a proceeding under section 2255.
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denied a petitioner's petition, the court may only issue a certificate of appealability when a petitioner makes a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To make a substantial showing, the petitioner must establish that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further'." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

In the present case, the Court finds that Petitioner has not made the required substantial showing of the denial of a constitutional right to justify the issuance of a certificate of appealability. Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Accordingly, the Court DECLINES to issue a certificate of appealability.

## ORDER

For the foregoing reasons, the Court HEREBY ORDERS as follows:

1.  The petition for writ of habeas corpus (Doc. 1), is DENIED with prejudice;

2.  The Clerk of the Court is DIRECTED to enter judgment and close the file;

3.  The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

Dated:   **September 7, 2011**                                    **/s/ Jennifer L. Thurston**
                                                                        UNITED STATES MAGISTRATE JUDGE